UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FORWARD FINANCING LLC,

    Plaintiff,

vs.

MARK D. GUIDUBALDI & ASSOCIATES, LLC,
d/b/a PROTECTION LEGAL GROUP, LLC, and
CORPORATE BAILOUT, LLC,

    Defendants.
_____/

CIVIL ACTION

NO. 16 - 12406

## COMPLAINT

Plaintiff FORWARD FINANCING LLC, sues Defendants MARK D. GUIDUBALDI & ASSOCIATES, LLC, d/b/a PROTECTION LEGAL GROUP, LLC, and CORPORATE BAILOUT, LLC, and alleges:

### JURISDICTION, VENUE, AND PARTIES

1. Plaintiff Forward Financing LLC, is a Delaware limited liability company which at all times hereto maintained its principal place of business in Boston, Massachusetts.

2. Forward Financing LLC's members are citizens of the state of Massachusetts.

3. Defendant Mark D. Guidubaldi & Associates, LLC, d/b/a Protection Legal Group, LLC ("PLG"), is an Illinois limited liability company with a principal place of business in Schaumburg, Illinois. The members of PLG at the time of this action are citizens of Illinois and Pennsylvania.

4. Defendant Corporate Bailout, LLC ("Corporate Bailout"), is a New Jersey limited liability company with a principal place of business in Somerville, New Jersey. The members of Corporate Bailout at the time of this action are citizens of New Jersey.

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), as there is complete diversity between the parties, and Plaintiff seeks damages in excess of $75,000, as alleged herein.

6. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the acts and/or omissions giving rise to this action occurred in Suffolk County, Massachusetts.

7. All conditions precedent to the initiation of this action have been performed, occurred, or waived or excused.

8. Plaintiff has retained the undersigned counsel to represent its interests in this matter and it is obligated to pay it a reasonable fee for its services.

## ALLEGATIONS COMMON TO ALL COUNTS

9. In recent years, fraudulent debt elimination and debt settlement schemes have flourished throughout the United States. Promoters of these schemes generally claim that, for an up-front fee, they will eliminate or substantially reduce a party's debts or other obligations to creditors. However, these schemes have no valid basis in law or in fact, and they fail to provide any of the promised relief to consumers or other entities unwittingly enlisted into such schemes. Ultimately, the parties who fall prey to such schemes typically find themselves with even greater financial problems than before.

10. Such schemes have become so prevalent and varied that the Treasury Department's Office of the Comptroller of the Currency and the Federal Deposit Insurance

Corporation now warn consumers about such schemes, and several Attorneys General have brought civil actions to prevent this misconduct. The Massachusetts Attorney General has also published warnings about such debt elimination schemes.

11.     Defendants PLG and Corporate Bailout have carried out their own version of this scheme, aimed not at consumers but at merchants and other commercial businesses. Scouring public records for UCC-1 Financing Statements, among other methods, the Defendants identify and solicit merchants and other commercial entities to enroll in a "Debt Restructure Program" or similarly labeled program, promising to significantly reduce the merchants' debts or other obligations. In fact, the Defendants' "programs" are shams, empty promises with no basis in law or fact designed not to assist these merchants but to exploit the merchants' vulnerabilities and take their money for the Defendants' own benefit – at the expense of the merchants' creditors and business associates.

12.     Plaintiff Forward Financing LLC, is among the many parties harmed by the Defendants' misconduct. Forward Financing is a company that provides working capital to merchant businesses in exchange for an interest in a designated portion of the merchants' future accounts and receivables. Under a Future Receipts Sales Agreement, a merchant agrees to sell a certain amount of its future receipts to the Plaintiff for an immediate cash payment. The merchant further agrees to pay Plaintiff a daily amount of the future receipts to fulfill the transaction, with the daily amounts deducted from the merchant's operating account by the Plaintiff pursuant to the Future Receipts Sales Agreement through Plaintiffs' Automatic Collection Program.

13.     Pursuant to the Future Receipts Sales Agreement, the merchants and the Plaintiff agree that the transaction contemplated by the Agreement is not a loan, a forbearance of money

lent or any similar credit transaction, but rather a purchase and sale of future receipts. Indeed, the Agreement expressly recognizes that, by purchasing a merchant's future receipts, the Plaintiff has assumed the risk that the merchant's business may fail, or be adversely affected by conditions outside the control of the merchant.

14. The Agreement further provides the Plaintiff with certain powers to collect the daily amounts if necessary. For example, the Agreement allows Plaintiff to file a financing statement under the Uniform Commercial Code (UCC) to evidence the sale of the future receipts to the Plaintiff. The merchant further grants to the Plaintiff a power of attorney coupled with an interest in the merchant's accounts, such that, if a merchant were to divert business revenue to a separate account, the Plaintiff could execute any instrument or document necessary to gain access to any separate merchant account to effectuate collection of the daily amounts of the future receipts.

15. Precisely because a transaction arising from this Agreement is not a loan but rather a purchase of future receipts, in many cases merchants entering into this Agreement further agree not to enter into any agreement with a third party that offers debt restructuring services, debt settlement services, debt management services, debt balance reduction services, creditor reduction services, creditor negotiation services, financial mitigation services, or similar services. Moreover, a merchant is required to notify the Plaintiff within 24 hours of receiving a solicitation from such a service provider, and to provide Plaintiff with copies of any written material provided by the third party to the merchant.

16. Under the terms described above, Plaintiff has entered into Future Receipts Sales Agreements with multiple merchants across the United States. However, several merchants have

recently stopped making payment to Plaintiff from the future receipts pursuant to their contracts at the direction of the Defendants, thus causing damage to the Plaintiff.

17. For example, on July 15, 2016, Plaintiff executed a Future Receipts Sales Agreement with merchant National Security, LLC, of McAllen, Texas. Pursuant to the agreement, Plaintiff provided National Security with a cash advance of $22,000, and in return Plaintiff purchased future receivables valued at $30,800. To collect its purchased future receipts, Plaintiff received daily payments from National Security's account through August 26, 2016. Four days later, on August 30, 2016, National Security signed a power of attorney with PLG. Subsequently, PLG directed National Security to make no further to Plaintiff pursuant to the Agreement, and the merchant ceased communication with Plaintiff, referring all inquiries to PLG.

18. In a similar manner, PLG and Corporate Bailout have interfered with Plaintiff's contracts with other merchants, including but not limited to: Port City Logistics, Inc., of Oswego, N.Y.; BW CPA Group, Inc., of Los Angeles, Cal.; J&J Pool and Beach Services, Inc., of Pembroke Pines, Fla.; Troupe Eyecare, LLC, of Fort Worth, Tex.; Scarpinato's Cucina & Catering of Blackwood, N.J.; and Courageous Journeys Counseling Services, PC, of Yuma, Ariz.

19. Each of these merchants received cash advances from Plaintiff in amounts ranging from $10,000 to $100,000, and subsequently ceased making payments to Plaintiff within 90 days of receiving the cash advances – and after being solicited to enroll in a Defendant's "Debt Restructure Program."

20. Prior to soliciting each of these merchants to sign up for their sham services, PLG and Corporate Bailout had no relationship with any of them.

21. Under the guise of providing debt mitigation services, the Defendants directed each of the merchants named above to cease their required payments and direct all inquiries from Plaintiff to Defendants. The Defendants also directed these merchants to transfer Plaintiff's payments to the Defendants themselves.

22. However, in each of these cases, PLG and Corporate Bailout have not articulated any legal justification for their interference with these contracts, or identified any legal defects in the Future Receipts Sales Agreements. In fact, there is no legal basis for any of these merchants to discontinue their payments to Plaintiff pursuant to their respective Agreements. In essence, Defendants have simply taken Plaintiff's assets as a hostage, and demanded a discount in exchange for their release.

23. PLG engages these merchants under an agreement under which PLG offers to assist the merchants through a "Debt Restructure Program" – despite the fact that the merchants' agreements with Plaintiff do not constitute loans or debts. Upon information and belief, Corporate Bailout engages merchants through a similar program.

24. The Defendants promised these merchants that they could erase their debts and otherwise alleviate their financial problems by convincing creditors – or, in the case of Plaintiff, purchasers of receivables – to accept a significantly reduced amount as payment in full for their clients' debts or financial obligations, irrespective of the fact that the Defendants' actions and the merchants they purportedly advise have no legal basis.

25. For their "services," the Defendants receive fees of 25 percent or more of the debts or other obligations that a merchant placed in the Defendants' programs, plus monthly "retainer" and "administration" fees. As a result of the Defendants' scheme, the merchants described above paid thousands of dollars to the Defendants – money that the merchants believed

would be forwarded, at least in part, to the Plaintiff or other creditors. Instead, the Defendants diverted this money to themselves – including funds from receivables belonging to Plaintiff.

26. As a result of the Defendants' misconduct, the merchants have received nothing of value – and Plaintiff has been injured.

## CAUSES OF ACTION

### COUNT I
**(Tortious Interference with Contractual Relations)**

27. Plaintiff Forward Financing sues Defendants PLG and Corporate Bailout and realleges and reasserts the allegations preceding the first count of this Complaint as if fully set forth herein.

28. Pursuant to its written Future Receipts Sales Agreements, Plaintiff provides cash advances to merchants, and the merchants agree to sell to Plaintiff an interest in the merchants' future receipts or accounts receivable.

29. The Defendants at all times had knowledge of the existence of the Future Receipts Sales Agreements which existed between Plaintiff and its merchant customers, including but not limited to the merchants referenced in paragraphs 17 and 18 of this Complaint.

30. The Defendants knowingly, intentionally and improperly, without privilege or justification, interfered with Plaintiff's contracts with these merchants and induced these merchant customers to breach their contracts with Plaintiff by soliciting and directing the merchants to stop payment to Plaintiff pursuant to the Future Receipts Sales Agreements. By stopping the payments required by these Agreements, the merchants breached the Agreements as a result of, and in reliance on, the Defendants' unlawful actions. The Defendants further interfered with Plaintiff's right to receive payments from these merchants pursuant to the Future

Receipts Sales Agreements, as the Defendants have taken funds from these merchants in which Plaintiff has purchased an interest under these Agreements.

31. The Defendants also knowingly, intentionally and improperly, without privilege or justification, interfered with Plaintiff's contracts with these merchants and induced these merchant customers to breach their contracts with Plaintiff by entering into separate contracts with the Defendants for debt restructuring services, which is expressly prohibited under the terms of the Future Receipt Sales Agreements.

32. The Defendants' interference was both intentional and made with improper motive or means.

33. Specifically, the Defendants' induced and/or directed the merchants to breach their agreements with Plaintiff by falsely claiming that these merchants had a legal basis for breaching their agreements; by falsely claiming that their "Debt Restructure Program" and/or similar programs provided a legal basis for their breach; and by falsely claiming that they had the means, ability or legal basis to restructure or otherwise modify the terms of Plaintiff's agreements with these merchants.

34. The Defendants' conduct was made with the improper motive to divert to itself the merchants' funds from their receipts – in which Plaintiff had a lawful interest pursuant to its contracts with the merchants – to advance its scheme to defraud these merchants through their bogus "Debt Restructure Program" or similar programs.

35. The Defendants' wrongful and intentional interference with Plaintiff's merchant contracts has harmed Plaintiff by preventing Plaintiff from receiving the benefit of its contracts with these merchants.

36. As a proximate result of the foregoing intentional interference by the Defendants, Plaintiff has suffered damages in excess of $75,000.

37. Plaintiff has been required to retain the services of attorneys to prosecute this action and thus is entitled to an award of reasonable attorneys' fees and costs incurred herein.

38. Plaintiff is further entitled to injunctive relief to prevent Defendants PLG and Corporate Bailout from continuing their unlawful conduct.

WHEREFORE, Plaintiff demands judgment against Defendants PLG and Corporate Bailout for damages, costs, interest, and for injunctive relief, and for any other relief that the Court deems just and necessary.

## COUNT II
### (Conversion)

39. Plaintiff Forward Financing sues Defendants PLG and Corporate Bailout and realleges and reasserts the allegations preceding the first count of this Complaint as if fully set forth herein.

40. Pursuant to the Future Receipts Sales Agreements, Plaintiff had an ownership or possessory interest in the receipts or revenue received by its merchant customers, including but not limited to the merchants referenced in paragraphs 17 and 18 of this Complaint, after Plaintiff remitted its cash advances to these merchants pursuant to the Agreements.

41. The Defendants intentionally and wrongfully exercised control or dominion over the merchants' receipts and revenue by directing the merchants to cease payment of these funds to Plaintiff under Plaintiff's Automatic Collection Program, and having these same funds automatically drafted from the merchant's accounts to bank accounts under the control and dominion of the Defendants.

42. As a proximate result of the Defendants' conversion of the merchant funds belonging to Plaintiff, Plaintiff has suffered damages in excess of $75,000.

43. Plaintiff has made demand for the return of its property, but the Defendants have refused to return this property.

44. Plaintiff has been required to retain the services of attorneys to prosecute this action and thus is entitled to an award of reasonable attorneys' fees and costs incurred herein.

45. Plaintiff is further entitled to injunctive relief to prevent Defendants PLG and Corporate Bailout from continuing their unlawful conduct.

WHEREFORE, Plaintiff demands judgment against Defendants PLG and Corporate Bailout for damages, costs, interest, and injunctive relief, and for any other relief that the Court deems just and necessary.

## COUNT III
### (Massachusetts Consumer Protection Act)

46. Plaintiff Forward Financing sues Defendants PLG and Corporate Bailout and realleges and reasserts the allegations preceding the first count of this Complaint as if fully set forth herein.

47. This is a claim for violations of the Massachusetts Consumer Protection Act, M.G.L.A. 93A § 11.

48. Plaintiff engages in "the conduct of any trade or commerce" within the meaning of M.G.L.A. 93A § 11.

49. The Defendants have willfully, knowingly and deceptively induced or directed Plaintiff's merchant customers, including but not limited to the merchants referenced in paragraphs 19-22 of this Complaint, to breach their agreements with the Plaintiff and cease payment to Plaintiff of their future receipts as required by their agreements.

50. The Defendants willfully, knowingly and deceptively convinced these merchant customers that there was a legal basis for the merchants to cease their payments to Plaintiff as required under their agreements. The Defendants further deceived these merchants by falsely claiming that their "Debt Restructure Program" or similar programs provided a legal basis for their breaches of the agreements, and by falsely claiming that they had the means, ability or legal basis to restructure or otherwise modify the terms of Plaintiff's agreements with these merchants.

51. The Defendants' willful, knowing and deceptive conduct caused the merchant customers to breach their agreements with Plaintiff, which these merchants would not have done but for the Defendants' deceptive conduct.

52. The Defendants' willful, knowing and deceptive conduct caused injury to Plaintiff by causing the merchant customers to breach their agreements with Plaintiff and cease their payments to Plaintiff under the agreements.

53. As a proximate result of the Defendants' deceptive and unfair trade practices, Plaintiff has suffered damages in excess of $75,000.

54. Because of the Defendants' deceptive and unfair trade practices, Plaintiff is entitled to recover actual damages, double or treble damages, and attorneys' fees and costs pursuant to M.G.L.A. 93A § 11.

55. Plaintiff is further entitled to injunctive relief to prevent Defendants PLG and Corporate Bailout from continuing their deceptive, unfair and unlawful conduct.

WHEREFORE, Plaintiff demands judgment against Defendants PLG and Corporate Bailout for damages, costs, interest, and injunctive relief, and for any other relief that the Court deems just and necessary.

## **PRAYER FOR RELIEF**

WHEREFORE, Forward Financing prays for relief as follows:

1. Permanent injunctive relief against Defendants PLG and Corporate Bailout, as described above;

2. Damages against Defendants PLG and Corporate Bailout in excess of $75,000;

3. Double or treble damages against Defendants PLG and Corporate Bailout pursuant to M.G.L.A. 93A § 11;

4. An award of reasonable attorneys' fees and costs;

5. An award of interest on such sums at the highest rate allowed pursuant to law; and

6. For such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiffs demand a trial by jury on all issues so triable.

    Respectfully submitted,

    **COMBIES HANSON**
    137 Lewis Wharf
    Boston, Massachusetts 02110
    Telephone: (617) 556-9964
    Facsimile: (617) 556-9965

    By: */s/ Adam J. Combies*
    Adam J. Combies, Mass. Bar No. 667150
    acombies@combieshanson.com

    -and-

    **COFFEY BURLINGTON, P.L.**
    2601 South Bayshore Drive, Penthouse One
    Miami, Florida 33133
    Telephone: (305) 858-2900
    Facsimile: (305) 858-5261
    Benjamin H. Brodsky, Esq.
    Florida Bar No. 73748
    Scott A. Hiaasen, Esq.

Florida Bar No. 103318
bbrodsky@coffeyburlington.com
shiaasen@coffeyburlington.com
lperez@coffeyburlington.com
service@coffeyburlington.com
(*Pro Hac Vice Applications Forthcoming*)

*Counsel for Plaintiff*